USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:________________
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

In the Matter of :

SHARON MAHN :

-------------------------------------------------------------- :

SHARON MAHN, :

Appellant, :

-against- :

MAJOR, LINDSEY & AFRICA, LLC, :

Appellee. :

-------------------------------------------------------------- X

25-CV-07437 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Sharon Mahn ("Mahn" or "Appellant") appeals from the judgment of the United States Bankruptcy Court for the Southern District of New York (Glenn, C.B.J.) ("Bankruptcy Court") dated August 28, 2025, *see* AP Dkt. 65,[1] denying Appellant a discharge of certain debts. A Notice of Appeal dated August 29, 2025, was filed in this Court on September 8, 2025. *See* Dkt. 1.[2] The decision of the Bankruptcy Court is AFFIRMED.

[1] Citations to "AP Dkt. ___" are references to the docket in *Major Lindsey & Africa, LLC v. Sharon Mahn*, No. 24-02822 (MG) (Bankr. S.D.N.Y.), the "Adversary Proceeding." The parties have identified and consolidated all relevant documents from the Adversary Proceeding in their joint appendix and record on appeal. *See* Dkt. 12 *et seq*. When referring to documents in the record on appeal, the Court will cite the Adversary Proceeding docket number.

[2] Appellant filed her brief on October 24, 2025. *See* Dkt. 13 ("App. Br."). On November 21, 2025, Major Lindsey & Africa, LLC ("MLA" or "Appellee"), filed its opposition, *see* Dkt. 14 ("Opp. Br."), and the appeal was fully submitted with the filing of Appellant's reply brief on December 19, 2025, *see* Dkt. 15 ("Reply Br.").

BACKGROUND

Given the extensive history between the parties in the Bankruptcy Court and in the prior American Arbitration Association arbitration proceeding (the "Arbitration"), the Court assumes the parties' familiarity with the factual background and procedural history and recites only those facts that are germane to the instant appeal. The facts discussed below are drawn from the record on appeal, *see* Dkt. 12 *et seq*., primarily (i) the facts outlined in the Partial Final Award ("PFA"), as determined by the arbitrator in the Arbitration,[3] (ii) the parties' statements and counterstatements of material facts in support/opposition to their respective motions for summary judgment in the Adversary Proceeding and the exhibits appended thereto,[4] (iii) facts referenced in Mahn's memorandum of law in support of her summary judgment motion in the Adversary Proceeding, including the "Declaration of Sharon Mahn" appended thereto,[5] and (iv) the Bankruptcy Court's memorandum opinion and order granting MLA's motion for summary judgment in the Adversary Proceeding (the "Bankruptcy Opinion").[6]

MLA is a legal executive search firm. AP Dkt. 57 ¶ 1. MLA hired Appellant Mahn as a legal recruiter in its "Partner Practice Group" in October 2005. *Id.* ¶ 7. As a condition of her employment, Mahn signed an employment agreement with MLA in which she agreed, *inter alia*, to "preserve and protect MLA's confidential information, trade secrets, and intellectual property,

[3] *See* AP Dkt. 72-4 ("PFA"). The PFA is included as a sealed exhibit to AP Dkt. 45.

[4] *See* AP Dkts. 45 (MLA's statement of undisputed facts in support of its summary judgment motion), 48 (Mahn's statement of undisputed facts in support of her summary judgment motion), 55 (MLA's counterstatement of material facts in opposition to Mahn's summary judgment motion), 57 (Mahn's counterstatement of material facts in opposition to MLA's summary judgment motion). Unless otherwise indicated, when discussing facts set forth in the parties' statements of undisputed material facts submitted in support of, or in opposition to, the cross-motions for summary judgment in the Adversary Proceeding, the Court refers only to undisputed facts as admitted by the non-movant.

[5] *See* AP Dkt. 47.

[6] *See* AP Dkt. 63 ("Bankr. Op.").

and that of its candidates and clients." *Id.* ¶¶ 8, 10.[7] Mahn's employment contract included additional language pertaining to the safekeeping of MLA's proprietary information, *id.* ¶ 13, including that "all non-public, confidential information concerning MLA candidates, including but not limited to candidates' non-public background information, career history, desire to explore other career opportunities, willingness to talk with another employer, and other non-public information about [a] candidate" was "confidential" or a "trade secret," *see* PFA at 5 (quoting employment agreement). Although Mahn's counterstatement of material facts feigned ignorance as to the precise contours of "confidential" and "trade secret" information, *see* AP Dkt. 57 ¶¶ 13–15, 19–28, the record is replete with testimony in which Mahn makes clear that she understood the terms of her employment agreement, including the confidentiality provisions, "and that she fully understood the meaning of all categories of 'confidential information' or 'trade secret' protected information," Bankr. Op. at 4–5 (collecting record citations).

Shortly after she joined MLA in 2005, Mahn began to funnel confidential information about MLA's candidates to MLA's competitors.[8] PFA at 2–3. The arbitrator found that "Mahn's expectation was that she would be paid part of the placement fee if any of the MLA

---

7 Mahn disputed this, claiming that the contractual excerpt included in MLA's statement of material facts "is incomplete and therefore misleading" and "refer[s] [the Court] to the actual language of the full contract." *See* AP Dkt. 57 ¶ 10. The Court has reviewed the contract. *See* AP Dkt. 45-1. There is nothing misleading about MLA's representation that Mahn's employment contract, which she signed, contained a confidentiality provision, and that provision is accurately reflected at AP Dkt. 57 ¶ 10.

8 In her responses to MLA's statement of material facts in support of its summary judgment motion, Mahn denied that she sent trade secret information to competitors because "[i]t has never been established that any information Mahn ha[d] access to was in fact a trade secret." AP Dkt. 57 ¶ 28. In that same response, however, Mahn did not dispute that "she sent 'MLA's confidential information' to her Hotmail account and that she 'had discussions with outside third parties about MLA's confidential information.'" *Id.* Notwithstanding Mahn's assertion that "MLA benefited from her communications with competitors," *id.* ¶ 30, the evidence is clear that Mahn shared MLA's proprietary, confidential information with competitors, in clear violation of her employment agreement. *See also* Mahn Decl., AP Dkt. 47 ¶ 8 ("One aggressive technique I used was to share and trade candidate information with contacts outside MLA. . . . The idea was to get that competitor counter party to give me information they had.").

candidates were placed by its competitors." *Id.* at 2–3. Evidence of Mahn's misconduct is not lacking. As noted in the PFA, during the course of Mahn's employment, there were "dozens upon dozens" of emails that demonstrated a blatant disregard of her contractual obligations. *Id.* at 3 ("[Mahn's] emails to competitors . . . contained admissions that she was violating her [MLA] Agreement by sending confidential information to them, such as the following: 'I will keep checking the database and see the firm that [candidates name omitted] approved. I will keep good track! . . . . I may not RAISE you $1 mill, but I will MAKE you $1 mill!'" (quoting exhibit)). The arbitrator described "[t]he scope, depth and audacity of [Mahn's] divulging of confidential information and trade secrets" as "enormous," asserting that it "would shock the conscience of any reasonable person." *Id.*[9] The Bankruptcy Court found that Mahn's "emails also demonstrate a significant degree of animus towards MLA." Bankr. Op. at 6–7.[10]

---

[9] The Court need not dwell on specific examples other than to note that there is a veritable trove of evidence revealing Mahn's misconduct, and relevant excerpts from her emails can be found at various points in the record, including in the PFA, as well as throughout MLA's statement of undisputed facts in support of its summary judgment motion, *see* AP Dkt. 45, and the exhibits appended thereto. It is beyond dispute that Mahn disseminated confidential information to multiple competitors of MLA. *See* PFA at 2–3 (collecting citations).

Some of Mahn's more damning communications include a January 2008 email to a recruiter in a competitor firm in which Mahn brags about divulging MLA's proprietary information to "screw over one of [her] jerky colleagues." AP Dkt. 57 ¶ 33. When asked during her deposition about this email, Mahn stated that "there had been problems with people at MLA" and she was merely "venting" to a friend. *Id.* Be that as it may, disseminating MLA's confidential candidate information to a competitor is not an appropriate way to cope with workplace annoyance. In another email, Mahn referred to herself as a "turncoat" and expressed the need to operate covertly so that she did not "get thrown out of [MLA]." *Id.* ¶ 45. Mahn dismissed that email as a "joke." *Id.* She also encouraged MLA's competitors to reach out to a candidate in MLA's pipeline while her MLA colleague was in the hospital. *Id.* ¶ 58. Mahn asserted that "[t]his topic is . . . clarified and refuted in Mahn's Second Declaration." *id.*; *see also* Second Mahn Decl., AP Dkt. 56-1. The Court disagrees; there is nothing in either of Mahn's declarations that remotely justifies funneling MLA's candidates away from an ailing colleague and into the hands of competitors. In yet another email, Mahn told a competitor to "out" a candidate for working with MLA to "make [the candidate] stop working with MLA"—before acknowledging that she, Mahn, is "evil." AP Dkt. 57 ¶ 53.c. Mahn claims that the email is "deliberately taken out of context," *id.*, but does not provide any additional background to help edify the Court. More examples of Mahn trying to sabotage MLA are collected in the Bankruptcy Court's opinion. *See, e.g.*, Bankr. Op. at 5–7 (citing emails).

[10] In several emails, Mahn claimed that she "hates" MLA and her colleagues, and in others she reveled in her ability to push MLA candidates to competitors—all while accepting salary and commission from MLA and lining her coffers with kickbacks. *See* AP Dkt. 57 ¶¶ 53, 61–62.

Complaints from other recruiters about Mahn's conduct spurred MLA to investigate. In 2009, MLA's Information Technology department searched Mahn's email and discovered that "at least on two occasions, [Mahn had sent] confidential information to competitors." PFA at 3–4. Although Mahn initially denied accusations of wrongdoing, when confronted with the emails, she admitted divulging confidential information, although she lied about when she began doing so. PFA at 2–4; *see also* Bankr. Op. at 8. MLA then fired Mahn. PFA at 4.

In 2010, MLA commenced the Arbitration against Mahn. Bankr. Op. at 8. Mahn was represented by counsel for much of the Arbitration proceeding. *Id.*[11] The four-day Arbitration hearing resulted in a partial final award in MLA's favor. The arbitrator determined that Mahn had (i) misappropriated MLA's confidential information and trade secrets in violation of her employment agreement, (ii) engaged in unfair competition in violation of New York State law, and (iii) breached her fiduciary duty of loyalty. *See generally* PFA at 5–15. The arbitrator denied Mahn's counterclaims and affirmative defenses. *Id.* at 18–23.[12] Ultimately, Mahn was ordered to disgorge "all the compensation and commissions paid to [her] during her time of employment with MLA" pursuant to the "faithless servant" doctrine. *See id.* at 25. This included: (i) $1,535,338 in disgorgement of commissions and salary paid to Mahn during her

---

[11] In the Adversary Proceeding, Mahn "disputed and denied" that she was represented by counsel during the Arbitration, asserting that she was represented "at times" and "at times was not." AP Dkt. 57 ¶ 72. The Bankruptcy Court, however, confirmed that Mahn was duly represented at all critical junctures of the Arbitration, including preparing and submitting her answer to the arbitration demand, at her deposition, at the Arbitration hearing, and for post-hearing briefing. *See* Bankr. Op. at 8 (citing Mahn's deposition transcript).

[12] In the Arbitration, Mahn "assert[ed] an unclean hands defense, arguing that MLA itself used information stolen from a competitor's server, violated its own policies, stole Mahn's contacts, and had knowledge of Mahn's conduct but ignored it because Mahn made money for MLA." Bankr. Op. at 8–9 (citing Mahn's post-Arbitration briefing). The arbitrator rejected Mahn's unclean hands argument, finding that there was no credible evidence proving a nexus between alleged misconduct by MLA and injury to Mahn. PFA at 22. The PFA also notes that "the 'unclean acts' alleged," but not proven, "to have been performed by MLA personnel pale with respect to the egregiousness of Mahn's divulging of confidential information and aiding MLA's competitors in stealing business opportunity over a consistent, four-year period, while being paid salary and commissions." *Id.* (citing *Dillon v. Dean*, 158 A.D.2d 579, 580 (2d Dep't 1990)).

employment, (ii) $232,288 in disgorgement of kickbacks Mahn admitted receiving from MLA's competitors during her employment, and (iii) post-judgment interest at nine percent. AP Dkt. 72-7 ("Final Award") at 24–25. Consistent with the terms of her employment agreement, she was also ordered to pay $945,765.39 in attorneys' fees and costs related to the Arbitration. *Id.* at 25; *see also id.* at 12 (arbitrator "awarded attorney's fees and costs to MLA, given the controlling language found in [Mahn's] Employment Agreement that provides, in sum and substance, that the prevailing party be entitled to such fees and costs"). The arbitrator declined to award punitive damages, however, findings that "the damage award granted to [] MLA of over $2 million . . . serves to make MLA whole for its losses, which is more than sufficient punishment for [Mahn]." *Id.* at 11.

On May 26, 2015, a New York State court entered an order confirming the Final Award and granting judgment in favor of MLA in the amount of $2,863,760.67. AP Dkt. 57 ¶ 95. On March 20, 2018, the New York Supreme Court's Appellate Division affirmed the confirmation order. *Id.* ¶ 97. MLA pursued collection efforts for several years before Mahn filed for bankruptcy protection in November 2022. *See* Bankr. Op. at 10. On July 5, 2024, MLA commenced an Adversary Proceeding in the Bankruptcy Court seeking determinations that MLA's debt is non-dischargeable (i) under Section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4), as a debt arising from Mahn's "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," and (ii) under Section 523(a)(6), 11 U.S.C. § 523(a)(6), as a debt "for willful and malicious injury by [Mahn] to [MLA]." *See generally* Compl., AP Dkt. 1; *see also* AP Dkt. 57 ¶ 101. The Bankruptcy Court dismissed MLA's defalcation claim but allowed the rest of the complaint to proceed. AP Dkt. 57 ¶ 108; *see also* Bankr. Op. at 10. As she had in the Arbitration, Mahn asserted various affirmative defenses in the Adversary

Proceeding, including, *inter alia*, unclean hands,[13] ratification, laches, equitable estoppel, good faith (on Mahn's part), and failure to mitigate (on MLA's part). *See generally* AP Dkt. 26; *see also* AP Dkt. 57 ¶ 111. Following fact discovery, the parties cross-moved for summary judgment. *See* AP Dkts. 44 (MLA motion), 47 (Mahn motion). On August 18, 2025, the Bankruptcy Court granted summary judgment, in part, in favor of MLA and against Mahn on MLA's claims and on Mahn's affirmative defenses. *See generally* Bankr. Op. The Bankruptcy Court held that (i) Mahn's narrow conception of what constitutes a "debt for" embezzlement, larceny, and willful and malicious conduct was contrary to governing law and inconsistent with precedent interpreting Section 523 of the Bankruptcy Code, *see* Bankr. Op. at 25–27; (ii) Mahn was collaterally estopped from arguing that she did not intend to deceive and defraud MLA, and, thus, various of her debts were not dischargeable under Section 523(a)(4), *see id.* at 30–32; (iii) Mahn was collaterally estopped, in part, from arguing that she did not act willfully and maliciously, and that various of her debts were not dischargeable under Section 523(a)(6), *see id.* at 33–35; and (iv) Mahn's affirmative defenses failed because the "arbitrator already ruled against [her] on identical . . . defenses which she asserted in the [A]rbitration," or because Mahn's asserted defenses were not applicable in the Adversary Proceeding, *see id.* at 36. The Bankruptcy Court did, however, hold that the attorneys' fees awarded by the arbitrator were dischargeable because, unlike the other awards, the fees were granted on a contractual basis. *Id.* Judgment was entered on August 28, 2025. *See* AP Dkt. 65. This appeal followed.

---

[13] The Bankruptcy Court noted that "Mahn testified that her unclean hands defense is based on her contentions that MLA knew of Mahn's actions and condoned them, that another MLA recruiter had stolen his prior employer's confidential information and used it while at MLA, and that MLA broke contracts with its clients." Bankr. Op. at 10. The Bankruptcy Court also noted that Mahn "admitted that she raised each of [these] arguments in the [A]rbitration." *Id.* at 10–11 (citing Mahn's deposition transcript). Mahn disputes the Bankruptcy Court's holding but does not explain how the Court erred, *see* AP Dkt. 57 ¶¶ 112–115. In any event, the record is clear that the arbitrator rejected each of Mahn's analogous affirmative defenses. *See supra* n.12.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from decisions of a bankruptcy court. "The [B]ankruptcy [C]ourt's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*." *Worms v. Rozhkov (In re Markus)*, 78 F.4th 554, 563 (2d Cir. 2023). The clear error standard permits the Court to set aside the Bankruptcy Court's factual findings only if the Court is "left with the definite and firm conviction that a mistake has been committed." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 119 (2d Cir. 2021) (citing *United States v. U.S. Gypsum*, 333 U.S. 364, 396 (1948)). "[C]lear error review mandates that [the Court] defer to the [Bankruptcy Court's] factual findings, particularly those involving credibility determinations." *Id.* at 120 (citing *Phx. Glob. Ventures, LLC v. Phx. Hotel Assocs., Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005)). A *de novo* review, however, permits the Court "to decide the issue as if no decision had been previously rendered. No deference is given to the Bankruptcy Court's decision." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 772 (B.A.P. 2d Cir. 2000), *aff'd*, 242 F.3d 367 (2d Cir. 2000).

## DISCUSSION

Appellant argues that the Bankruptcy Court erred in five respects. First, Mahn contends that the Bankruptcy Court violated her due process rights by turning a breach of contract judgment into one for embezzlement (or fraud) and maliciousness. *See* App. Br. at 2, 12–13, 20–25. Second, and along similar lines, she argues that the Bankruptcy Court misinterpreted Section 523(a) by altering the basis of the arbitrator's prior judgment. *Id.* at 3, 13–14. Third, Mahn argues that the factual record does not support a finding of embezzlement or maliciousness, and that the Bankruptcy Court "misapplied the doctrine of collateral estoppel" in holding otherwise. *Id.* at 4; *see also id.* at 13–20, 25–40. Fourth, Mahn asserts that her entire Arbitration award, not

just the award for attorneys' fees, was based on her employment contract—not the Section 523(a) torts—and thus should have been deemed dischargeable. *Id.* at 3, 41–43. Fifth, Mahn contends that she should have been entitled to rely on her affirmative defenses in the Adversary Proceeding. *Id.* at 4, 43–45.

I. <u>Exceptions to Discharge Under 11 U.S.C. § 523(a)</u>

Section 523(a) of the Bankruptcy Code enumerates various categories of debts that are not dischargeable under Section 727. Of relevance here, Section 523(a)(4) provides that a debtor may not be discharged from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Section 523(a)(6) provides that a debtor may not be discharged from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." *Id.* § 523(a)(6).

Mahn's primary argument on appeal is that MLA's claims in the Adversary Proceeding should have been struck because none of her debts is "for" embezzlement or "for" a malicious and willful injury. *See* App. Br. at 14, 16–20, 25–37. Mahn directs the Court to the Arbitration record; she asserts that MLA did not seek a final award based on fraud, embezzlement, or malicious and willful injury, and that Mahn never defended against such claims in the Arbitration. *Id.* at 21. Instead, she argues, her debts are "for" "breach[es] of her employment contract and conversion." *Id.* at 23. In essence, Mahn contends that the phrase "debt for" in Section 523(a) means that "the legal basis for the debt *must* include the grounds excepted under [S]ection 523 for the statute to apply." *Id.* at 25 (emphasis added). Put differently, if the exact Section 523(a) cause of action (*e.g.*, embezzlement or malicious and willful injury) was never "pled nor litigated" in the Arbitration, the underlying debt cannot be characterized as "for" either of those offenses.

Appellant is incorrect, and the Bankruptcy Court was right to reject her argument. Bankr. Op. at 25. The Supreme Court, too, has considered and rejected Mahn's position, noting that it would "make[] little sense" to subscribe to the hyper-narrow interpretation of the discharge statute for which she advocates. *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998). "Instead, 'debt for' is used throughout [Section 523] to mean 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like, . . . connoting broadly any liability arising from the specified object." *Id.* That the exact Section 523(a) tort was "not alleged in the [underlying] action" is not dispositive to the discharge analysis. *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 37 (Bankr. E.D.N.Y. 2011). Indeed, the Section 523(a) basis of the debt can nonetheless "be established if the findings [in the Arbitration] very clearly and explicitly show all of the *elements* required to make such finding." *Id.* (emphasis added). To do so, a bankruptcy court may rely on "findings in the pre-petition judgment which would satisfy the requisite elements of Section 523(a)." *Id.* at 29. The relevant consideration when analyzing Section 523(a)'s dischargeability exceptions is the debtor's underlying conduct, not the specific legal claims on which the debt is based. *See Long Is. Minimally Invasive Surgery, P.C. v. Orslini (In re Orslini)*, 649 B.R. 427 (Bankr. E.D.N.Y. 2023) (holding debt based on breach of contract and conversation non-dischargeable under Section 523(a)(6)) because "the Debtor's *conduct*, which gave rise to the [j]udgment and claim . . . was willful and malicious" (emphasis added)); *Whitaker Sec., LLC v. Rosenfeld (In re Rosenfeld)*, 543 B.R. 60 (Bankr. S.D.N.Y. 2015) (claims "based on many theories (for breach of contract, negligence, violations of regulations or other breach of duty)" may be "excepted from discharge . . . to the limited extent that they" satisfy the elements of a Section 523(a) tort).

In sum, it matters not whether the exact Section 523(a) torts were "noticed or litigated" in the Arbitration. *See* App. Br. at 23. The critical question is whether the Bankruptcy Court could identify factual (or legal) findings from the Arbitration that unequivocally "satisfy the requisite elements" of the Section 523(a) tort at issue. *Wisell*, 494 B.R. at 29. Appellant's objection to the Bankruptcy Court's interpretation of the phrase "debt for" in Section 523(a) is overruled.

II. Bankruptcy Court's Denial of Discharge Pursuant to Sections 523(a)(4) & (a)(6)

Having established that causes of action other than embezzlement or malicious and willful injury can result in debts that are not dischargeable under Section 523(a)(4) and (a)(6), the Court must determine whether the Bankruptcy Court correctly concluded that the findings of the arbitrator meet the elements of the Section 523(a) torts, thus rendering Mahn's debt to MLA (or, some portion thereof) non-dischargeable. The Bankruptcy Court concluded that those elements had been met while also holding that the doctrine of collateral estoppel precluded Mahn, in part, from arguing otherwise. After a *de novo* review, this Court agrees.

*a. Bankruptcy Court's Decision & Arguments on Appeal*

The Bankruptcy Court correctly recited the elements of (i) embezzlement and (ii) willful and malicious injury under Sections 523(a)(4) and (a)(6), respectively, *see* Bankr. Op. at 21–25, and considered the dischargeability of Mahn's non-contractual[14] debt under each provision. As to Section 523(a)(4), the Bankruptcy Court held that "Mahn cannot credibly contest the first two elements of embezzlement under federal law," *id.* at 30, and that the third element—fraudulent intent or deceit—had been established by the arbitrator's "factual findings . . . that Mahn breached her duty of loyalty" by "stealing [MLA's] assets or property consisting of confidential

[14] As previously noted, *see supra* at 7, the Bankruptcy Court held that the attorneys' fees award constituted a contractual debt, and that portion of the judgment was, therefore, dischargeable, *see* Bankr. Op. at 36. The Court refers to Mahn's remaining debts—*i.e.*, those rooted in her breach of fiduciary duty, unfair competition, and misappropriation of trade secrets—as her "non-contractual" debts. *See also infra* Section III.

information and trade secrets, as well as its business goodwill, while secretly divulging the same to MLA's competitors, and receiving financial kickbacks after placements by these competitors," using "a pseudonym to place candidates with competitors, and "coach[ing] the competitors on how to sever the candidate's relationships with MLA." *Id.* at 32 (quoting PFA at 7). Further, the Bankruptcy Court held that "the arbitrator's findings collaterally estop[ped] Mahn from arguing" that she did not act with an intent to deceive or defraud MLA. *Id.*

In the alternative, and although not necessary because of its conclusion that Mahn's non-contractual debt was not dischargeable under Section 523(a)(4), the Bankruptcy Court also assessed whether Section 523(a)(6) provided any relief. As to Section 523(a)(6), the Bankruptcy Court held that "[t]he elements of a New York unfair competition claim are substantially similar to the willfulness requirement under Section 523(a)(6)." *Id*. at 31. The Bankruptcy Opinion further notes that the arbitrator necessarily found that Mahn's conduct met this requirement when she ruled in MLA's favor on the unfair competition claim. *Id.* at 33–34. Accordingly, the Bankruptcy Court determined that Mahn was collaterally estopped from arguing that her conduct was not willful. *Id.* at 34. The Bankruptcy Court also held that the issue of intent was actually litigated in the Arbitration because a finding of bad faith was necessary to conclude that Mahn engaged in unfair competition. *Id.* at 35. Because the record in the Arbitration provided compelling evidence that Mahn misappropriated MLA's property through "subterfuge and without any cause or excuse," the Bankruptcy Court concluded that Mahn's non-contractual debt was also non-dischargeable under Section 523(a)(6). *Id.* (quoting *Forest Diamonds Inc. v. Aminov Diamonds LLC*, No. 06 Civ. 5982 (GEL), 2010 WL 148615, at *14 (S.D.N.Y. Jan. 14, 2010)). The Bankruptcy Court granted MLA's motion for summary judgment and denied Mahn's motion. *Id.* at 37.

On appeal, Mahn seems to argue that the Bankruptcy Court erred in its application of collateral estoppel; she contends that "the Bankruptcy Court's conclusions that [she] engaged in embezzlement and/or maliciousness are not actually supported by citation to clear an unequivocal evidence, and thus fail to satisfy" the elements of the Section 523(a)(4) and (a)(6) torts, respectively. App. Br. at 15. Mahn also asserts that the Bankruptcy Court's decision denying her discharge violated her fundamental due process rights because the Arbitration award was not based on embezzlement, fraud, or maliciousness,[15] and "the litigants never pursued, briefed, or argued for a judgment" based on those causes of action. *Id.* at 2, 12. Mahn contends that the Bankruptcy Court effectively "revis[ed]" and "reengineered" the basis of the Arbitration award, and trampled on her "notice and right to be heard on [the] charges levied against" her by collaterally estopping her from challenging various elements of the Section 523(a) torts. *Id.* at 12–13. As a corollary to her due process argument, Mahn claims that the Bankruptcy Court "misapplie[d]" the Bankruptcy Code by "invent[ing] a new claim suggested by [S]ection 523 that was never litigated or decided in the [A]rbitration," thus requiring her to disgorge millions of dollars "as a penalty for conduct that was never an issue in the [A]rbitration and for which [she] never had the chance to defend herself against." *Id.* at 13–14.

MLA counters that the Bankruptcy Court correctly applied the doctrine of collateral estoppel to preclude Mahn from rearguing various issues that were decided in the Arbitration, Opp. Br. at 15–17, 37–41, and correctly held that Mahn's debts were non-dischargeable as "debts

---

[15] Mahn claims that the arbitrator rejected maliciousness on her part as a basis for her decision not to award punitive damages. App. Br. at 13. As the Court discusses below, *see infra* at 21, this argument misapprehends the arbitrator's decision and, moreover, is not supported by the record. Mahn's lack of maliciousness was never cited as a reason to deny MLA's request for punitive damages. Because punitive damages are discretionary, it cannot be said that a "residual aspect" of MLA's request for punitive damages was "thus denied under the residual clause of" the Final Award. App. Br. at 24.

for" embezzlement (under Section 523(a)(4)) or, alternatively, malicious and willful injury (under Section 523(a)(6)), *id.* at 20–33.

*b. Application*

There is no dispute that the doctrine of collateral estoppel applies in discharge proceedings, such as the Adversary Proceeding. *See Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to [Section] 523(a)."). Likewise, Appellant does not dispute that collateral estoppel applies to factual findings made in an arbitration proceeding. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–23 (1985); *Munoz v. Boyard* (*In re Boyard*), 538 B.R. 645, 653 (Bankr. E.D.N.Y. 2015). There is also no dispute that, because a New York State court confirmed the Arbitration award, the Bankruptcy Court was required to apply New York's collateral estoppel rules. *See Wharton v. Shiver* (*In re Shiver*), 396 B.R. 110, 119 (Bankr. S.D.N.Y. 2008) ("The full faith and credit statute requires that where the earlier [] judgment was rendered in a state court, it is the collateral estoppel law of that state that determines the effect to be accorded the state court judgment.").

The question for the Court, then, is whether the Bankruptcy Court erred in holding that the doctrine of collateral estoppel applies in this case.

i. <u>Collateral Estoppel Under New York State Law</u>

Collateral estoppel, also known as issue preclusion, prevents a party from re-arguing an issue of fact or law if a court (or arbitrator[16]) has already decided the issue in a previous, separate action. Collateral estoppel is distinct from *res judicata*, which "bars relitigation of claims that either were or could have been raised in a prior action." *Jeda Capital-56, LLC v. Potsdam*

---

[16] *See, e.g.*, *Mordukhayev v. Comm'r of Lab.*, 104 A.D.3d 1005, 1006 (3d Dep't 2013) ("[T]he arbitrator's factual findings must be accorded collateral estoppel effect.").

*Assocs., LLC*, 225 A.D.3d 988, 999 (3d Dep't 2024). In other words, even where the claims in a second action differ from those in a prior proceeding, collateral estoppel may still preclude litigation of a specific issue that was necessarily decided in the first proceeding.

Under New York law, the collateral estoppel inquiry involves a two-step analysis. First, the Court must determine whether identical issues were decided in the prior action, and whether such issues are decisive in the present action. *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 65 (2d Cir. 2007). An identity of issues exists if the proceedings involve substantially identical legal theories and causes of action and have no significant factual differences. *See Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985). Second, the Court must determine whether the party to be precluded "had a full and fair opportunity to litigate the issues in the prior determination." *Id.* at 458; *see also Schwartz v. Pub. Admr.*, 24 N.Y.2d 65, 71 (1969); *Kowalski v. Mohsenin*, 38 A.D.2d 274, 276 (2d Dep't 1972).

A bankruptcy court may, therefore, give collateral estoppel effect "to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." *Grogan*, 498 U.S. at 284 (citing Restatement (Second) of Judgments § 27 (1982)). "Any reasonable doubt as to what was decided by a prior judgment . . . should be resolved against using it as an estoppel." *Perino v. Cohen (In re Cohen)*, 92 B.R. 54, 70–71 (Bankr. S.D.N.Y. 1988); *see also* Bankr. Op. at 21. In the context of a summary judgment motion, the party invoking collateral estoppel bears the burden on all elements, while the party "opposing the application of collateral estoppel bears the burden of 'showing that the prior action did not afford a full and fair opportunity to litigate.'" *Guggenheim Cap., LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 801 (Bankr. E.D.N.Y. 2014) (quoting *Kulak v. City of N.Y.,* 88 F.3d 63, 72 (2d Cir. 1996)); *see also In re Hunter*, 6 A.D.3d

117, 133 n.2 (2d Dep't 2004) (Altman and Goldstein, JJ., concurring in part) (citing *Kaufman*, 65 N.Y.2d at 455–56, and *Laing v. Cantor*, 1 A.D.3d 406, 407 (2d Dep't 2003)); *Winter v. Town of New Hartford Cent. Sch. Dist.*, 240 A.D.3d 1302, 1303 (4th Dep't 2025).

ii. Collateral Estoppel & Section 523(a)(6)

As previously discussed, *see supra* Section I, Section 523(a)(6) of the Bankruptcy Code makes non-dischargeable a debt "for willful and malicious injury by the debtor." 11 U.S.C. § 523(a)(6). There are three elements to a Section 523(a)(6) claim: (i) the debtor acted willfully; (ii) the debtor acted maliciously; and (iii) the debtor's willful and malicious actions injured the plaintiff or the plaintiff's property. *Birnbaum*, 513 B.R. at 802–03.

In holding that Mahn was collaterally estopped, in part, from arguing that her debt was not for malicious and willful injury, the Bankruptcy Court compared the elements of the Section 523(a)(6) tort to the arbitrator's legal conclusion that Mahn had engaged in unfair competition in violation of New York State law and the factual findings underpinning that conclusion. *See* Bankr. Op. at 33–35. Unfair competition under New York law is an intentional, two-element tort. It requires a showing that (i) the defendant misappropriated the plaintiff's product, labor, skills, expenditures, or goodwill, and (ii) the defendant acted in bad faith when doing so. *See, e.g.*, *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692–93 (2d Dep't 2007) (collecting cases).

It is easy to identify parallels between the elements of each tort. For one, Section 523(a)(6)'s malicious and willful injury and the tort of unfair competition both include virtually identical intent requirements. In the Section 523(a)(6) context, to establish that a debtor acted "willfully," the plaintiff must show that the debtor "deliberate[ly] or intentional[ly] caused" the injury in question; injuries inflicted negligently or recklessly are insufficient. *Kawaauhau v.*

*Geiger*, 523 U.S. 57, 61–62 (1998); *see also Soliman v. Vyshedsky* (*In re Soliman*), 539 B.R. 692, 699 (Bankr. S.D.N.Y. 2015). Unfair competition, likewise, requires the plaintiff to prove willful conduct on the part of the tortfeasor. Indeed, to sustain an unfair competition cause of action, "it must be shown that [the tortfeasor] intentionally acted with a dishonest purpose to injure" another; there is no tort for "reckless" or "negligent unfair competition." *Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 WL 1664238, at *7–8 (E.D.N.Y. May 11, 2012).

Next, both the Section 523(a)(6) tort and the tort of unfair competition require that the underlying conduct caused an injury. In the bankruptcy context, for a debtor's actions to cause an injury to a creditor, "[t]he conduct complained of must be intended to or necessarily cause injury." *Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005). So too for the tort of unfair competition, which "is defined as any form of unlawful business injury that is tortious in nature." *Michele Pommier Models, Inc. v. Men Women N.Y. Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 337 (S.D.N.Y. 1998) (cleaned up). To sustain a claim for unfair competition under New York law, the plaintiff must prove that the defendant intentionally caused the injury in question; intentional acts with unintended consequences will not suffice. *See Barbagallo*, 2012 WL 1664238, at *8.

To sum up, both the Section 523(a)(6) tort and the tort of unfair competition require a showing of intentional and deliberate injury. An identity of issues (at least as to these two elements) has clearly been met because the arbitrator necessarily concluded that Mahn willfully and intentionally injured MLA in order to find in MLA's favor on its unfair competition claim. Bankr. Op. at 33–34. This Court's review of the record confirms that conclusion. The PFA explicitly states that the arbitrator's unfair competition findings were predicated on Mahn's theft and misappropriation of MLA's confidential and proprietary information, her improper

disclosure of MLA's trade secrets, "her efforts to drive MLA's candidates away to competitors" and "aid[] MLA competitors in terms of placing candidates that MLA recruiters were working with," and to "otherwise harm MLA." PFA at 15. It would defy logic to assume that Mahn did not vigorously challenge these findings during the Arbitration. At the very least, she had the opportunity to do so. The arbitrator nonetheless concluded that she was "unable to contradict MLA's unfair competition claim." PFA at 14. The Bankruptcy Court did not err by collaterally estopping Mahn from arguing that (i) her conduct was not willful, and (ii) her willful conduct did not injure MLA. Bankr. Op. at 33–34.

The final question, then, is whether Mahn acted "maliciously," as that term is used in Section 523(a)(6). After carefully reviewing the arbitrator's factual findings, the Bankruptcy Court concluded that she had. *See id.* at 34–35. The Court finds no error in the Bankruptcy Court's analysis[17] of Mahn's conduct and agrees that the arbitrator's factual findings demonstrate that Mahn acted maliciously.

In the Second Circuit, "malicious" has been defined as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 87 (2d Cir. 1996). If, however, a debtor's conduct is motivated solely "by profit or gain or other benefit to the debtor," liability does not arise under Section 523(a)(6) no matter how deplorable the conduct. *Kerin Enters. Holding Co. v. Marklin*

[17] It is not entirely clear whether the Bankruptcy Court (i) held that Mahn was collaterally estopped from arguing that she did not act with malice, or (ii) simply determined, *ab initio*, that the arbitrator's factual findings supported a finding of malice. The Court's review of the Bankruptcy Opinion suggests the latter approach. The Bankruptcy Opinion begins by reciting a collateral estoppel principle (that the non-bankruptcy court need not make a finding of malice *per se* to estop a party from arguing otherwise) but ultimately concludes with a review of the arbitrator's factual findings before holding that Mahn's was "the type of behavior" that the Second Circuit has consistently held "will lead to [S]ection 523(a)(6) non-dischargeability." Bankr. Op. at 34–35 ("Mahn's behavior, as established in the [A]rbitration, fits [the Second Circuit's] definition [of malice], and the factual findings underpinning the arbitrator's findings on MLA's unfair competition claim establish that Mahn acted with malice.").

*(In re Marklin)*, No. 8-21-71030 (REG), 2023 WL 6306786, at *9 (Bankr. E.D.N.Y. Sept. 27, 2023). There must be "some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice." *Id.* (quoting *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009)). That said, "the knowing exploitation of [an] employer's assets for [the debtor's] benefit . . . gives rise to a finding of malice," because there is rarely a "just cause or excuse" for such conduct. *Id.* at *9–10.[18]

Mahn's conduct fits the bill. As previously discussed, the arbitrator found that MLA's unfair competition claim succeeded "based not only on Mahn's theft" and the use of MLA's confidential information for her personal gain, "but also [on] her efforts to drive MLA's candidates away to competitors, and otherwise harm MLA." PFA at 15. Separately, in holding that Mahn had breached her fiduciary duty of loyalty to MLA, the arbitrator concluded that Mahn "failed to 'exercise the utmost good faith and loyalty' towards MLA 'in the performance of her duties,'" PFA at 8, by "violat[ing] MLA's legal rights and act[ing] contrary to the duties imposed upon her by her relationship with MLA," Bankr. Op. at 35. Although Mahn continues to argue that she "lack[ed] [an] intent to defraud" and that her conduct was otherwise justified,[19] *see* App. Br. at 36–37, 43–45, the Court affords her assertions little weight, given the exceptional amount of evidence that proves Mahn was aware that her conduct was wrongful and dishonest—including evidence in which she, *e.g.*, refers to herself as "evil" for knowingly misappropriating

---

[18] In *Marklin*, the bankruptcy court reviewed the record and determined that it "support[ed] a finding that the Defendant misappropriated his employer's assets by copying its valuable information and providing it to a competitor company *and* proffered no justification for his actions." 2023 WL 6306786, at *10 (emphasis added). The lack of justification rendered the case unique from "an ordinary tort or breach of contractual duty generally" and "in the context of federal bankruptcy law, [was] sufficient to satisfy [Section] 523(a)(6)." *Id.* at *9–10.

[19] *See generally* Mahn Decl., AP Dkt. 47 (describing a self-professedly difficult history at MLA, including an account of MLA executives who treated her poorly and of MLA's allegedly improper conduct); Second Mahn Decl., AP Dkt. 56-1 (similar).

MLA's confidential information, gleefully shepherds candidates away from a hospital-bound colleague and towards competitors, and demonstrates an overt and visceral contempt for MLA, *see supra* nn.9–10, all while "accept[ing] a salary and commission." PFA at 7. The Court has reviewed the record[20] and cannot accept Mahn's position that the PFA fails to cite adequate evidence to support a finding that her conduct was malicious. App. Br. at 39. To the contrary, the record is replete with "compelling evidence that[,] through subterfuge and without any cause or excuse," Mahn misappropriated MLA's proprietary assets, both for her own gain and with an eye towards wounding MLA and those who worked there. *Forest Diamonds Inc.*, 2010 WL 148615, at *14; *see also Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008) ("Malice may be found where a debtor has breached a statutory duty 'willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstances to warrant the denial of a discharge.'"). This Court agrees with the Bankruptcy Court, *see* Bankr. Op. at 35, that the arbitrator's factual findings confirm the reprehensibility of Mahn's behavior and cannot be justified "on any level." *Bundy A. Corp. v. Blankfort* (*In re Blankfort*), 217 B.R. 138, 143–46 (Bankr. S.D.N.Y. 1998) ("[T]he element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor."); *see also Norbrook Labs. Ltd. v. G.C. Hanford Mftg. Co.*, 297 F. Supp. 2d 463, 491 (N.D.N.Y. 2003) ("At a minimum, . . . a claim for unfair competition 'requires allegations of unfairness and an unjustifiable attempt to profit from

---

[20] "Whether circumstances are sufficiently aggravating to support a finding of malice is a fact-specific determination made on a case-by-case basis." *Marklin*, 2023 WL 6306786, at *9 (citing *Wu v. Lin* (*In re Qiao Lin*), 576 B.R. 32, 43 (Bankr. E.D.N.Y. 2017)); *see also Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008) ("A court should look to the totality of the circumstances to determine malice.").

another's expenditure of time, labor and talent.'" (quoting *Greenblatt v. Prescription Plan Services Corp.*, 783 F. Supp. 814, 825 (S.D.N.Y. 1992)). Because each element of MLA's willful and malicious injury claim has been met, Mahn's non-contractual debt is not dischargeable under Section 523(a)(6).[21]

Separately, Mahn's suggestion that the arbitrator rejected maliciousness as a basis for its award, App. Br. at 13, is an egregious misstatement of the arbitrator's decision and entirely is unsupported by the record.[22] The arbitrator's discretionary decision not to impose punitive damages on Mahn appears to have been based primarily (if not exclusively) on mercy. *See* Final Award at 11–12 (noting that an award of punitive damages "is discretionary on the part of an arbitrator" and finding "that the damage award granted to [] MLA . . . is more than sufficient

---

[21] Although it is not obvious that the Bankruptcy Court decided on this basis, Mahn could have been collaterally estopped from arguing that she did not act maliciously. "When applying collateral estoppel to a Section 523(a)(6) determination, the [arbitrator] need not have made a finding of malice *per se*. Rather[,] the bankruptcy court can infer from the prior factual findings whether a debtor's pre-bankruptcy conduct was 'malicious' sufficient to satisfy Section 523(a)(6)." *Wisell*, 494 B.R. at 42. That is to say, the arbitrator's decision need not use the terms "malicious" or "malice," so long as the decision required "findings that are the equivalent of findings of malice." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 70 (Bankr. E.D.N.Y. 2006); *see also Burberry Ltd. v. Horowitz* (*In re Horowitz*), No. 14-36844 (CGM), 2016 WL 1039581, at *5 (Bankr. S.D.N.Y. Mar. 15, 2016) ("Malice may be implied based on the surrounding circumstances[] or found constructively."). Contrary to Appellant's argument, it is not dispositive that "[t]here is not a word in [the arbitrator's decision] about maliciousness or willfulness." App. Br. at 38.

To sustain MLA's unfair competition claim, the arbitrator was required to find that Mahn acted in "bad faith." *E.g.*, *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 643 (S.D.N.Y. 2012) ("[A] plaintiff asserting an unfair competition claim under New York common law must [] show that [the] defendant acted in bad faith."). "Bad faith" is described as "the mirror image of good faith" and "connotes a dishonest purpose." *Kalisch-Jarcho, Inc. v. City of N.Y.*, 58 N.Y.2d 377, 385 n.5 (1983). Is a "dishonest purpose" akin to acting "maliciously" (*i.e.*, "wrongful[ly] and without just cause or excuse, even in the absence of personal hatred, spit, or ill-will," *Stelluti*, 94 F.3d at 87)? It certainly can be. In *Birnbaum*, 513 B.R. at 807, the bankruptcy court held that a prior finding that a debtor acted in bad faith constituted a sufficient showing of malice merely because, as here, the debtor's state of mind was necessarily disputed and litigated as an element of the underlying claim. And like the debtor in *Birnbaum*, "the record shows that [Mahn] disregarded orders," lied to MLA about her conduct, and "intentionally and willfully" funneled MLA's confidential information to competitors, despite an obvious appreciation that her actions were improper. *Id.*; *see generally* PFA at 2–15. "This equates with acting maliciously for purposes of" Section 523(a)(6). *Birnbaum*, 513 B.R. at 807. Thus, "the[] issues are substantially identical in this case and [in the Arbitration], and th[e] requirement is met" for purposes of collateral estoppel. *Id.*

[22] *See also, e.g.*, App. Br. at 24. Mahn claims that "[m]aliciousness can never be part of the award[] because the [arbitrator] was asked to include it as part of the debt, and that request was fully denied." *Id.* For the reasons stated above, this is a flagrant distortion of the arbitrator's discretionary conclusion regarding the utility *vel non* of awarding punitive damages.

punishment for [Mahn]"). Because the "denial was not based on any finding of Mahn's behavior," the Bankruptcy Court was correct in holding that MLA was "not barred by collateral estoppel from arguing that Mahn's actions constituted willful and malicious behavior just because the arbitrator denied MLA's request for punitive damages." Bankr. Op. at 27.

In sum, the Court can conclude that, with respect to the Section 523(a)(6) tort elements, (i) the arbitrator necessarily decided that Mahn acted willfully and she intentionally injured MLA, and (ii) Mahn had a full and fair opportunity to litigate each of those issues when defending the unfair competition claim. As such, she was properly estopped from arguing that neither element was met for purposes of the discharge proceedings in the Bankruptcy Court. Furthermore, the record clearly establishes that Appellant's conduct falls within the Second Circuit's definition of "malicious." Thus, the Bankruptcy Court did not err in holding that Mahn's non-contractual debt was not dischargeable under Section 523(a)(6). Because the Court affirms the Bankruptcy's Court's denial of discharge pursuant to 523(a)(6), it will not separately consider whether Mahn's non-contractual debt is also not dischargeable under Section 523(a)(4).

Finally, the Court finds that Appellant's due process arguments are without merit. For the reasons discussed above, this case does not present a situation in which "the Bankruptcy Court effectively revised the debt" or otherwise "transform[ed] the judgment to encompass claims that were never made, never litigated, and never defended." *See* App. Br. at 22–24. The Bankruptcy Court has "exclusive jurisdiction to determine non-dischargeability claims that arise under 11 U.S.C. § 523, regardless of whether similar claims were advanced in a pre-petition forum." *Donut Café, LLC v. Dieyleh* (*In re Dieyleh*), Nos. 21-11350 (JGR), 21-01127 (JGR), 2022 WL 1252368, at *11 (Bankr. D. Colo. Apr. 18, 2022); *see also, e.g.*, *Grogan*, 498 U.S. at 284 ("Since 1970 . . . the issue of non[-]dischargeability has been a matter of federal law

governed by the terms of the Bankruptcy Code."). Again, it is irrelevant that the claims at issue in the Arbitration did not match exactly the Section 523(a) torts being considered in the Adversary Proceeding; the Bankruptcy Court methodically "point[ed] to unequivocal factual and/or legal findings in the [arbitrator's] judgment which would satisfy the requisite elements of" the Section 523(a) torts, thus justifying its decision in both fact and law. *Wisell*, 494 B.R. at 29; *see also* Bankr. Op. at 21–25, 27–35.[23]

Moreover, Mahn cannot point to a single case in which a Court has held that the proper application of collateral estoppel constituted a violation of one's due process right to notice and an opportunity to be heard. Indeed, when applied properly, collateral estoppel cannot violate due process because the doctrine itself contains a built-in due process safeguard: it may only be applied when the party against whom it is invoked had a full and fair opportunity to litigate the issue in the prior proceeding. *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (the elements of collateral estoppel "preserve[] the due process restraint[s]" on litigants); *Li v. Appellate Div. of N.Y. Sup. Ct.*, No. 22-3040-CV, 2023 WL 4240945, at *2 (2d Cir. June 29, 2023) (summary order) (citing *Wyly*); *see also United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1265–66 (2d Cir. 1975) (signaling that application of collateral estoppel does not violate due process rights in criminal case). Because the Bankruptcy Court did not err in its application of the estoppel doctrine, the Court has little trouble concluding that her due process rights were not violated.

---

23 As the Supreme Court has stated, "the mere fact that a conscientious creditor has previously reduced his claim to a judgment should not bar" a bankruptcy court from making "further inquiry into the true nature of the debt." *Brown v. Felsen*, 442 U.S. 127, 138 (1979). "'Congress intended the fullest possible inquiry' to ensure that 'all debts arising out of'" malicious and willful injury by the debtor "are 'excepted from discharge,' no matter their form." *Archer v. Warner*, 538 U.S. 314, 315 (2003) (quoting *Brown*, 442 U.S. at 138)). This is why the doctrine of *res judicata*—but not collateral estoppel—is inapplicable to questions of discharge in bankruptcy proceedings. *See Busche v. Grover (In re Grover)*, 667 B.R. 243, 256 (Bankr. S.D.N.Y. 2025).

III. Dischargeability of Disgorged Salary

Appellant also argues that the portion of her debt reflecting disgorgement of her salary should be discharged because it is "based on the [her] Employment Agreement," and is, therefore, a debt rooted in a breach of contract, not a debt for a tort enumerated in Sections 523(a)(4) and (a)(6). App. Br. at 41–43; *see also* Reply Br. at 10–15. She is wrong. Disgorgement of Mahn's salary constitutes a measure of damages for, *inter alia*, the torts that she committed (*i.e.*, breach of fiduciary duty and unfair competition). *See* PFA at 6–9, 14–15, 25–26; *see also supra* Section II. That the salary provisions in Mahn's contract were used to calculate the amount of consequential damages owed does not alter the legal basis for which the remedy was awarded. PFA at 26 ("Mahn's [tortious] conduct is fully deserving of the penalty of a full disgorgement of her compensation as set forth in her Employment Agreement, as well as any commissions earned during her employment at MLA."). Unlike the arbitrator's award of attorneys' fees, which was made on a "contractual basis,"[24] disgorgement of Mahn's salary was made "pursuant to New York law on unfair competition, breach of fiduciary duty, breach of contract, [and] misappropriation of trade secrets."[25] Bankr. Op. at 36.

The Bankruptcy Court's denial of discharge for damages based on disgorgement of Mahn's salary is affirmed.

---

[24] MLA disagrees with the Bankruptcy Court's decision that the attorneys' fees portion of the judgment is dischargeable but has not appealed the issue. Opp. Br. at 41 n.5.

[25] Mahn claims that "[w]ithout the duties and responsibilities identified by [her] [employment] contract, there could be no misappropriation claim, unfair competition, or disloyalty claims." Reply Br. at 14. That is simply an incorrect statement of law. Although Mahn's employment with MLA resulted in her executing an employment contract, and Mahn's access to MLA's confidential information was predicated on her employment, none of the common-law torts identified by Appellant hinges on the existence of a contract that articulates specific employee duties. A first-year law student knows that a tort is a civil wrong arising out of a duty imposed by law, not by a contractual agreement, and that most torts—including those in the context of an employment relationship—are not "simply another form of [a] breach of contract." Reply Br. at 15.

IV. Appellant's Affirmative Defenses

Finally, the Bankruptcy Court held that "all of Mahn's affirmative defenses fail" because: (i) "[t]he arbitrator already ruled against Mahn on her identical unclean hands and ratification defenses which she asserted in the [A]rbitration;" (ii) "laches is inapplicable in this action, as is equitable estoppel[;]" (iii) "the arbitrator already found that Mahn acted in bad faith;" and (iv) "the mitigation defense does not affect the determination of dischargeability." Bankr. Op. at 36. Although Mahn vaguely asserts that she should be "entitled to rely on her affirmative defenses" (plural), App. Br. at 43 (capitalization corrected), she challenges only the Bankruptcy Court's decision as to her unclean hands defense, *see id.* at 43–45.[26]

Mahn argues that the Bankruptcy Court should not have rejected her unclean hands defense because the arbitrator "did not dismiss [her] affirmative defenses" and, even if it had, "that point is irrelevant because no fraud claim" was ever presented in the Arbitration "and these defenses have never been used in the context of defending against a fraud claim." App. Br. at 44. MLA counters that Mahn asserted an affirmative defense of unclean hands during the Arbitration and that the arbitrator unequivocally rejected the defense. Opp. Br. at 44.

The record makes plain that Mahn's previously asserted unclean hands defense suffered from a utter "lack of credible evidence." PFA at 22. Mahn's contention that the arbitrator never rejected her unclean hands argument is puzzling inasmuch as the arbitrator dedicated an entire section of the PFA to dismantling it. *See* PFA at 21–22 (section entitled "Doctrine of Unclean

[26] "[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). Mahn does not press any of her defenses, including unclean hands, in her reply papers, *see generally* Reply Br., so the arguments may have been abandoned altogether.

Hands"). The doctrine of *res judicata*[27] precludes Mahn from re-asserting her unclean hands defense in the Adversary Proceeding. *See In re Hunter*, 4 N.Y.3d 260, 269 (2005).

The Bankruptcy Court's summary rejection of Mahn's affirmative defense(s) is affirmed.

CONCLUSION

For the foregoing reasons, Mahn's appeal of the Bankruptcy Court's decision that portions of her debt to MLA are not dischargeable pursuant to Section 523(a) of the Bankruptcy Code is denied. The Court AFFIRMS the rulings of the Bankruptcy Court as stated herein. Consistent with the Bankruptcy Court's judgment in the Adversary Proceeding, *see* AP Dkt. 65, Mahn is ordered to pay MLA the sum of $3,540,675.92, plus post-judgment interest, as provided in 28 U.S.C. § 1961.

The Clerk of Court is respectfully directed to CLOSE this case.

**SO ORDERED.**

**Date: September 30, 2026**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**

[27] Although "the United States Supreme Court has held that *res judicata* is inapplicable in a denial of discharge proceeding," *Grover*, 667 B.R. at 256, the inapplicability of the doctrine is specific to the issue of dischargeability in bankruptcy; as far as the Court is aware, there is no blanket rule rendering *res judicata* inapplicable to all aspects of a discharge proceeding, such as the viability of previously-litigated affirmative defenses.